ROGERS, J.
 

 On February 13, 1926, Mrs. Armide GuiL lory Dupre mortgaged a tract of land containing 128 acres in the parish of St. Landry to secure a loan of $3,000. In June, 1931, the Prudential Insurance Company of America, the mortgagee, foreclosed the mortgage, and the property was sold in execution of the writ of seizure-and sale on August-8, 1931. At this sale the property was adjudicated to the plaintiff for $2,150.
 

 On the day of the sale the mortgagor opposed the proceeding alleging that the property was her homestead, and claiming $2,000 out of the proceeds in satisfaction of hex-homestead rights. Plaintiff excepted to the mortgagor’s opposition oix the ground that it failed to disclose a cause of action or right of action. This exception was maintained and the mortgagor’s demand was rejected. From this judgment, the' mortgagor has appealed.
 

 The mortgagor alleged, in her opposition, that she has been married four times, first to Paulastrom Dupre, who died forty-seven years ago; second,- to Mexxtor Dupre, who died in 1908; third, to Rosemond Soileau, to whom she was married on December 20, 1919, and from whom she was divorced -on March 31, 1930; and, fourth, to her present husbaixd, Louis Joubert, to whom she was married on April 21, 1930.
 

 That at the time the mortgage was execut: ed she was married to Rosemond Soileau, her third husband, who was living apart from her and not coixtributing to her support, and that she occupied the mortgaged property belonging to her separate estate as a home.
 

 That she had wholly dependent upon her (1) a major son, Horace Dupre, issue of her first marriage, a person of weak mind now under interdiction and confined in a state hospital for the insane in Texas, incapable of self-support, and with no other person to aid him than opponent, and no home other than hers to turn to should he recover sufficiently to be released from the asylum; (2) Mary Joy Carroll, a girl child thirteen years of age, whom she has reared and maintained in her home since infancy; and (3) a minor boy
 
 *1061
 
 child, Quinton Carroll, about eleven years old, whom she has reared and maintained in her-home for over seven years past. That she has been a mother to her two foster children who are dependent upon her for support.
 

 Opponent alleged that her present husband, Louis Joubert, is seventy-five years old, in feeble health, has no property, and is really dependent upon opponent for a living and upon her home to shelter him in his old age.
 

 Opponent also alleged that she was in no wise responsible for the recital in the act of mortgage that she was married but once and then to Mentor Dupre, deceased; that plaintiff’s agents knew, or should have known, that she was married to Rosemond Soileau at the time of the mortgage, which she signed without reading or understanding its contents, and no explanation whatever was made to her of the effect of the pretended waiver of her homestead rights as set forth in the instrument.
 

 Opponent further averred that she adopted the allegations of the third opposition which had been previously filed by the Opelousas-St. Landry Bank & Trust Company, holder of a second mortgage with waiver of homestead exemption signed by her and her husband Rosemond Soileau.
 

 The bank, in its opposition, set up a claim to be paid up to $2,000, the amount of the homestead exemption, by preference over plaintiff, a mortgage creditor without a valid waiver of the mortgagor’s homestead rights.
 

 Plaintiff argues that opponent is not entitled to any homestead exemption whatever; ■ that, if she is, she is estopped to claim the exemption by reason of her express waiver thereof in the act of mortgage wherein she represented herself as having been married but once, and then to Mentor Dupre, deceased; that in view of her admission that the waiver in the second mortgage is valid, she is without interest to claim the homestead exemption and thus to litigate for the bank.
 

 The court below held that opponent was estopped by the recitals in the act of mortgage and for that reason dismissed her opposition.
 

 Opponent contends the judge erred in so doing, because, under the constitutional provision, the waiver of the homestead exemption to be effective must be signed by both spouses, and, being founded on public policy, there can be no waiver except in the method prescribed by the constitution itself. There is considerable merit in opponent’s contention, which she supports by the citation of numerous authorities. But be that as it may, we do not deem it necessary to discuss that phase of the controversy, as we think oppo-. nent must fail in her demand on other grounds.
 

 Under section 1 of article 11 of the Constitution of 1921 no person is entitled to the homestead exemption therein granted unless he, or she, is (1) the head of a family; or (2) one having a mother or father or a person or persons dependent on him or her for support; or (3) the surviving spouse or minor child or children of a deceased beneficiary.
 

 Opponent alleges that the property on which she claims the homestead is her separate property and that the mortgage indebtedness against which she urges the exemption is her individual indebtedness. Therefore, her claim does not fall within the third class, and, in order to successfully maintain it, she must show as provided in the first and second
 
 *1063
 
 classes that she is either the head of a family or a person having others dependent upon her for support. Succession of White, 170 La. 403, 127 So. 883.
 

 Opponent does not show that she has any dependents. Her son Horace Dupre was at least forty-eight years old at the time of the seizure herein. At that time, as shown by the allegations of opponent’s petition, he was not dependent upon her for support, and she has not affirmatively shown that he was dependent upon her at the date the mortgage was executed.
 

 Even if opponent’s son were dependent upon her at the time the mortgage was executed and was not dependent upon her at the time the mortgage was foreclosed, the exemption asserted the right to the- homestead must fall. Denis v. Gayle, 40 La. Ann. 286, 4 So. 3; Hebert v. Mayer, 42 La. Ann. 839, 8 So. 590; Martin v. Walker, 43 La. Ann. 1019, 10 So. 365; Abbeville Rice Mill v. Shambaugh, 115 La. 1047, 40 So. 453.
 

 Opponent’s two foster children are not dependents within the contemplation of the homestead laws. Galligar v. Payne, 34 La. Ann. 1057. The court, in deciding the question in that case, said: “It is no doubt a laudable act of charity on the part of plaintiff to minister unto the wants and necessities of the children for whom she has assumed to provide; but, however praiseworthy her conduct may be, the law, in its justice and wisdom, will not permit her to impose upon her honest creditors the burden of her bounty. She must be just before she can be generous.”
 

 See, also, Askew v. Parker, 131 La. 753, 60 So. 233, where the court denied a homestead exemption to a woman claiming it on the ground of her maintenance of the illegitimate child of her son; there being no duty on her to support such child.
 

 Opponent’s only other alleged dependent is her present husband, Louis Joubert. But at the time of the execution of the mortgage opponent was not married to Joubert. And homestead rights cannot come into existence to the prejudice of a mortgage resting on the property before it becomes a homestead. Ellis v. J. Freyhan & Co., 124 La. 53. 49 So. 975; Percy v. Ewing, 137 La. 1100, 69 So. 852; Williams v. Continental Bank & Trust Co., 173 La. 353, 137 So. 59.
 

 The opposition of tho Opelousas-St. Landry Bank & Trust Company, the second mortgage creditor, alleges that Mrs. Armide Guillory Dupre, the mortgagor, is entitled to the homestead exemption claimed because she is the head of a family; and the mortgagor in her opposition refers to and adopts the allegations of the bank’s opposition.
 

 But the mortgagor does not show that she is the head of a family. In Galligar v. Payne, referred to supra, we find the following definition of the term, viz.:
 

 “In its limited sense, the word family signifies the father, mother and children; in its ordinary acceptation, it means all the relations who descend from a common root; in its most extensive scope, it comprehends all the individuals who live under the authority of another, including even servants. R. C. C. 3556, § 12. * * *
 

 “In the application of a Statute in derogation of common right, we cannot arrogate the authority to give the word family, found in
 
 *1065
 
 the law relied upon, such an enlarged definition as would make it so far reaching, as to put in the power of any * * * unscrupulous debtor to avail himself, at his whim and caprice, of the protective provisions of a law of grace and benevolence. That law was intended solely for the relief of a few meritorious persons in necessitous circumstances, bound by nature, conscience or the .law, to support persons incapable of earning a living, and necessarily, wholly dependent upon them for maintenance.”
 

 And the court in that ease held that a woman who had brought up and was supporting in her house two orphan children was not the head of a family. •
 

 In Askew v. Parker, supra, a homestead exemption was denied a woman whose family consisted of the eight year old illegitimate child of her son.
 

 And in Whyte v. Grant, 142 La. 922, 77 So. 648, this court held that to be the head of a family within the meaning of the homestead laws one must either have a responsibility (i. e., at least a natural or moral obligation) to support, or have parental authority over another member of a family.
 

 Our conclusion is that, under the facts shown in the mortgagor’s opposition, she was not the head of a family and had no one dependent on her. And that the waiver of her homestead in the mortgage was mere surplus-age. In view of this conclusion it becomes unnecessary for us to decide whether the interest of the mortgagor in the issues raised by her in her opposition herein is real or purely academic.
 

 For the reasons assigned, the judgment appealed from is affirmed.